UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| L.E.L.L,[1]<br>(A-Number: 240-159-856)<br><br>　　　　　Petitioner,<br><br>　　v.<br><br><br><br>SERGIO ALBARRAN, et al.,<br><br>　　　　　Respondents. | No.  1:26-cv-01464-JLT-FJS (HC)<br><br>ORDER GRANTING PETITIONER'S MOTION TO PROCEED UNDER A PSEUDONYM<br><br>[ECF No. 3]<br><br>FINDINGS AND RECOMMENDATION TO DISMISS THE PETITION FOR WRIT OF HABEAS CORPUS<br><br>[ECF Nos. 1, 9]<br><br>[14-DAY OBJECTION DEADLINE] |

Petitioner L.E.L.L. is a noncitizen who entered the United States without inspection on or about May 22, 2023. (ECF No. 1 at 2.) He was not apprehended by immigration authorities at or near the time of his border crossing. (ECF No. 1 at 2.) He eventually settled in Albany, New York, where he lived for more than two years. (ECF No. 1 at 2.) He worked, provided support to close family members, and had no criminal history. (ECF No. 1 at 2.)

On August 6, 2025, Petitioner was detained by U.S. Immigration and Customs Enforcement ("ICE") agents. (ECF No. 1 at 2.) On August 28, 2025, an immigration judge held a

---

[1] As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits petitioner's full name, using only his first name and last initial, to protect sensitive personal information. *See* Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

1

custody re-determination hearing and denied bond release on the ground that Petitioner posed a flight risk. (ECF No. 1 at 2.)

On January 12, 2026, the immigration judge ordered Petitioner's removal. (ECF No. 9-3.) On February 1, 2026, Petitioner filed a motion in immigration court to reopen removal proceedings, or in the alternative, reconsider the removal decision. (ECF No. 1-7.) The motion remains pending. (ECF No. 1 at 2.) In addition, on February 10, 2026, Petitioner filed an appeal of the immigration judge's decision order of removal with the Board of Immigration Appeals ("Board"). (ECF No. 1 at 2.) The appeal is also pending. *See* EOIR, Automated Case Information, https://acis.eoir.justice.gov/en/caseInformation/ (last visited July 1, 2026).

Petitioner does not challenge the removal order here. He challenges only the fact and duration of his custody. (ECF No. 1 at 2.) He contends the duration of his detention has exceeded the bounds of reasonableness. (ECF No. 1 at 2.) He requests immediate release, and if appropriate, imposition of conditions of supervision. (ECF No. 1 at 2-3.)

On March 16, 2026, Respondents filed a motion to dismiss the petition contending Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b). (ECF No. 9 at 2.)

On March 30, 2026, Petitioner filed an opposition to the motion to dismiss. (ECF No. 11.)[2]

I.    JURISDICTION AND LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). A district court may grant a writ of habeas corpus when the Petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a]

---

[2] On May 19, 2026, Petitioner filed a second habeas petition in this district. *L.E.L.L. v. Warden*, Case No. 26-cv-3864-TLN-CKD. The government filed in this case and in that case notices of related case. (ECF No. 12; ECF No. 14 (Case No. 26-cv-3864). On June 25, 2026, the magistrate judge assigned to the latter filed case issued findings and recommendations recommending the latter filed case be dismissed. (ECF No. 16 (Case No. 26-cv-3864).)

2

removal order." *Lopez-Marroquin v. Barr*, 955 F.3d 759, 759 (9th Cir. 2020) (citing *Singh v. Holder*, 638 F.3d 1196, 1211–12 (9th Cir. 2011)).

II.     DISCUSSION

As the basis for Petitioner's detention, Respondents urge the court to adopt reasoning consistent with the new DHS guidance—that Petitioner's recent re-detention is mandatory under section 1225(b) and, therefore, Petitioner is not entitled to any individualized custody determination or release.  (ECF No. 9 at 1-2.) In his opposition, Petitioner contends that Respondents have wrongly subjected him to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2). (ECF No. 11 at 2-6.) There is, to be sure, a split among the district courts as to whether 8 U.S.C. § 1226 or 8 U.S.C. § 1225 applies to aliens like Petitioner here. *Compare Lepe*, 801 F. Supp. 3d at 1118, *with Alzono v. Noem*, No. 25-cv-01519 WBS SCR, 809 F. Supp. 3d 1069, 1073-74 (E.D. Cal. 2025). Here, the district court judge assigned to this case has repeatedly embraced the former view (as have most district court judges to address the question). *See J.S.H.M. v. Wofford*, No. 1:25-CV-01309-JLT-SKO (HC) (E.D. Cal. Oct. 16, 2025); *Ortiz Donis v. Chestnut*, No. 1:25-CV-01228-JLT-SAB (HC), 2025 WL 2879514 (E.D. Cal. Oct. 9, 2025); *M.R.R. v. Chestnut*, No. 1:25-CV-01517-JLT (HC), 2025 WL 3265446 (E.D. Cal. Nov. 24, 2025). This court recommends that Petitioner be treated the same as similarly situated aliens whose claims the district court judge assigned to this case previously adjudicated. Petitioner's due process claim will be evaluated under section 1226(a).

"Section 1226(a) creates a default rule for [aliens already present in the United States] by permitting—but not requiring—the Attorney General to issue warrants for their arrest and detention pending removal proceedings." *Jennings*, 138 S. Ct. at 846. Under section 1226(a) and its implementing regulations, detainees may request a bond hearing before an immigration judge at any time before a removal order becomes final and may request an additional bond hearing whenever they experience a material change in circumstances. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022).

The Fifth Amendment's Due Process Clause provides that "[n]o person shall be ... deprived of life, liberty, or property, without due process of law." "It is well established that the

Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993). The Supreme Court nevertheless has recognized that "[d]etention during deportation proceedings is a constitutionally permissible part of [the deportation] process." *Demore*, 538 U.S. at 531; *see also Carlson v. Landon*, 342 U.S. 524, 538 (1952) ("[d]etention is necessarily a part of this deportation procedure"). Morevoer, "Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Demore*, 538 U.S. at 522, *quoted in Rodriguez Diaz*, 53 F.4th at 1206.

There is an open question on the appropriate test to use when evaluating a due process claim in immigration detentions like Petitioner's. The Ninth Circuit observed that many courts have applied the *Mathews*[3] test in considering due process challenges in the immigration context. *See Rodriguez Diaz*, 53 F.4th at 1206 (noting that the government sought to use a substitute for the *Mathews* test that was "not specific" but "focuses more exclusively on the government's asserted interests in detaining aliens who are subject to removal"). Yet the Supreme Court has resolved some constitutional challenges to immigration detention without invoking *Mathews*. *See, e.g., Demore*, 538 U.S. at 523, 526–29; *Dusenbery v. United States*, 534 U.S. 161, 168 (2002) ("[W]e have never viewed *Mathews* as announcing an all-embracing test for deciding due process claims"). *But see Rodriguez Diaz*, 53 F.4th at 1206 (noting that the Supreme Court applied *Mathews* in considering a due process challenge to an immigration exclusion hearing). Still, many district courts in the Ninth Circuit, including this court, use the *Mathews* test in evaluating whether due process entitles a petitioner to relief when subjected to prolonged detention. *See, e.g., Ortiz Donis*, 2025 WL 2879514, at *12. And in *Rodriguez Diaz* the Ninth Circuit used the *Mathews* test and assumed (without deciding) that it applied to a due process claim for a second bond hearing in a section 1226(a) detention. 53 F.4th at 1206-07. Thus, the court finds application of the *Mathews* test in this case appropriate where Petitioner seeks a second bond hearing in a section 1226(a) detention.

---

[3] *Mathews v. Eldridge*, 424 U.S. 319 (1976).

4

A.  The *Mathews* Test

Under the *Mathews* test, the "identification of the specific dictates of due process generally requires consideration of three distinct factors." *Mathews*, 424 U.S. at 334–35. "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id*. at 335.

Turning to the first factor, Petitioner has a significant private interest in remaining free from detention.  "Freedom from imprisonment—from Government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). And an alien's private interest in "freedom from prolonged detention" is "unquestionably substantial." *Singh v. Holder*, 638 F.3d 1196, 1208 (9th Cir. 2011). Petitioner had been living in the United States for over two years, and during that time, he has worked, supported his family, and developed ties in the community. His detention denies him that freedom. He has been in custody for over nine months. *See Diouf II*, 634 F.3d at 1091 (holding that once "the alien has been detained for approximately six months," "continuing detention becomes prolonged"), *cited in Rodriguez Diaz*, 53 F.4th at 1207.

In *Rodriguez Diaz*, the Ninth Circuit held that "in evaluating the first prong of the *Mathews* analysis, it is not sufficient to simply count the months of detention and leave it at that." 53 F.4th at 1208. Instead, the analysis should consider "[t]he process received during this time, the further process that was available to [the alien], and the fact that his detention was prolonged due to his decision to challenge his removal order must also be considered." *Id*. The Ninth Circuit further held that it was "important not to overstate the strength of Petitioner's showing under the first *Mathews* factor." 53 F.4th at 1213. In this case, Petitioner was given a bond hearing in August 2025, where it was determined that he posed a risk of non-appearance. (ECF No. 9-2 at 2.) Respondent argues, and Petitioner does not contest, that Petitioner had the opportunity to present evidence and arguments at that earlier bond hearing. Nevertheless, the hearing was over

5

nine months ago, and it appears no further inquiry into the circumstances of Petitioner's prolonged detention has occurred. Furthermore, Petitioner's extended detention is coupled with his ongoing appeals of the immigration judge's order of removal and Petitioner's motion to re-open the removal proceedings. *Cf. Rodriguez Diaz,* 53 F.4th at 1207-08; *Demore*, 538 U.S. at 530-31. And Petitioner's interests are "further diminished by the fact that he is subject to an order of removal from the United States." 53 F.4th at 1208. In considering somewhat similar facts, *Rodriguez Diaz* did not pronounce a specific outcome on the first *Mathews* factor, 53 F.4th at 1208, although the court there ultimately held on balance that an additional bond hearing was not required, *id.* at 1213. Here, the court finds that this first *Mathews* factor tips in the government's favor.

As to the second factor, the court finds the risk of an erroneous deprivation of liberty to be low in this case. This is so because Petitioner was granted an individualized bond hearing before an immigration judge in August 2025. Similarly, *Rodriguez Diaz* held that the initial bond hearing was a large factor in concluding that existing agency procedures "sufficiently protected [the detainee's] liberty interest and mitigated the risk of erroneous deprivation." *Id*. at 1209. Petitioner complains the hearing was flawed as it was based on an incorrect factual premise. (ECF No. 11 at 11.) While that may be the case, he has avenues of relief he may pursue to challenge the hearing. *See* 8 C.F.R. § 1003.1(b). Thus, this is not a situation where "[the petitioner] has not received any bond or custody redetermination hearing." *A.E. v. Andrews*, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). And since section 1226(a) applies here, Petitioner is free to request another individualized custody hearing before an immigration judge. *See Rodriguez Diaz*, 53 F.4th at 1209 (citing 8 C.F.R. 1003.19(e)). At that hearing, he may present his materially changed circumstances that warrant re-evaluation of his detention. This further process mitigates the risk of a wrongful detention under *Mathews*. *Rodriguez-Diaz*, 53 F.4th at 1209-10.

In the third factor, the court weighs the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute requirement would entail." *Mathews*, 424 U.S. at 335. The Supreme Court has specifically instructed that in a *Mathews* analysis, we "must weigh heavily in the balance that control over matters of

immigration is a sovereign prerogative, largely within the control of the executive and the legislature." *Landon v. Plasencia*, 459 U.S. 21, 34 (1982). "Over no conceivable subject is the legislative power of Congress more complete." *Reno v. Flores*, 507 U.S. 292, 305 (1993) (quotations and alterations omitted). The government's interests in "protecting the public from dangerous criminal" noncitizens and preventing noncitizens from fleeing are "interests of the highest order." *Rodriguez Diaz v. Garland*, 53 F.4th at 1208. Juxtaposed to this weighty interest is the fact that custody hearings are routine and impose a "minimal" cost, *Doe v. Becerra,* No. 2:25-cv-00647-DJC-DMC, 2025 WL 691664, at *6 (E.D. Cal. March 3, 2025). Because Petitioner may avail himself of additional process under section 1226(a) should circumstances materially change, the marginal benefit of an additional process does not tip this third factor toward Petitioner here.

On balance, the *Mathews* factors do not weigh in favor of ordering a second hearing. From the court's perspective, Petitioner is in a similar position as *Rodriguez Diaz* evaluated. There, the Ninth Circuit concluded that § 1226(a)'s procedures satisfied due process and rejected the claim that a second bond hearing was required. 53 F.4th at 1213. The court is sensitive to Petitioner's argument and concern that the government relies currently on section 1225(b) as authority to detain and will frustrate current appeals or future requests for bond re-determination by invoking section 1225(b). At this point, however, the immigration judge denied release based on a risk of non-appearance, not on the distinction between sections 1225 and 1226. Should the Board base its decision solely on section 1225 or should a future bond re-determination hearing be denied solely on section 1225, Petitioner would have a substantively different habeas petition than exists today.

For the foregoing reasons, the court does not find that due process requires a second bond hearing at this time. In addition, the court recommends dismissing the petition, because the government has not denied him relief under section 1226(a). As discussed above, the immigration judge granted Petitioner's request for custody redetermination pursuant to 8 C.F.R. section 1236. (ECF No. 9-2 at 2.) Thus, despite the government's arguments that Petitioner is being detained under section 1225(b), he has so far enjoyed proper due process under section 1226(a). Again,

7

should the government alter course and deny a future custody hearing on the grounds of lack of jurisdiction, Petitioner may re-file a petition challenging the hearing.

III.     ORDER

As discussed in footnote 1, *supra*, Petitioner's request to proceed under the pseudonym "L.E.L.L." is GRANTED. (ECF No. 3.)

IV.     RECOMMENDATION

For the foregoing reasons, IT IS HEREBY RECOMMENDED that the petition be DISMISSED.

These findings and recommendation are submitted to the United States district court judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within fourteen (14) days after being served with a copy of these findings and recommendation, a party may file written objections with the court and serve a copy on all parties. *Id*. The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendation" and shall not exceed fifteen (15) pages, except by leave of court with good cause shown. The court will not consider exhibits attached to the objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. The district judge may disregard any pages filed in excess of the fifteen (15) page limitation.  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:   __**July 2, 2026**__                    _____
                                         UNITED STATES MAGISTRATE JUDGE